IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JAMES ARTHUR ROSS, | Case No. 2:23-cv-00515-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| STATE OF OREGON *et al.*, | |
| Defendants. | |

**BECKERMAN, Magistrate Judge.**

On April 10, 2023, Plaintiff James Arthur Ross ("Ross"), a self-represented litigant in custody at Two Rivers Correctional Institution ("TRCI"), filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that several Oregon Department of Corrections ("ODOC") officials ("Defendants") denied him adequate medical care in the diagnosis and treatment of an injury to his right hand. (ECF No. 2.) The Court has jurisdiction over Ross's claims pursuant to 28 U.S.C. §§ 1331 and 1367, and all parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

Now before the Court is Ross's second motion for a temporary restraining order. (ECF No. 61.) For the reasons discussed below, the Court denies Ross's motion.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

In his operative complaint, Ross asserts claims for inadequate medical care in violation of the Eighth Amendment, retaliation in violation of the First Amendment, and negligence. (First Am. Compl., ECF No. 29.) Ross alleges that Defendants were deliberately indifferent and negligent in delaying surgery for his right-hand injury, in failing to provide adequate treatment, physical therapy, and pain management, and in failing to accommodate his alleged disability. (*Id.*) Ross further alleges that Defendants retaliated against him for filing grievances and this litigation by, among other things, restricting his access to the law library, transferring him to another prison, and forcing him to work in an unsafe environment. (*Id.*)

On February 12, 2025, Ross filed his second motion for a temporary restraining order, asking the Court to order Defendants "to immediately stop interfering with and delaying the *processing* and *issuance* of any and all [Americans with Disabilities Act ("ADA")] resources to my person."[1] (Pl.'s Mot. Second TRO at 1, ECF No. 61.) At the time of filing, Ross was specifically concerned about the delay in receiving a Securebook with speak-to-text software as an accommodation for his right hand injury. (*See* Pl.'s Mem. Supp. TRO at 2-15, alleging that Defendants were interfering and delaying the issuance of a Securebook with speak-to-text software, ECF No. 62.)

///

---

[1] Defendants agreed to the relief Ross sought in his first motion for a temporary restraining order (ECF No. 23), and the Court temporarily enjoined Defendants from requiring Ross to work in any work assignment that presents a substantial risk of further pain and injury to his right hand, including but not limited to work in the TRCI kitchen. (Order, ECF No. 26.) Ross recently filed a third motion for a temporary restraining order, asking the Court to enjoin Defendants "from *delaying-and-denying and denying-through-delaying*, my person from receiving medical treatment and follow-up care for the injury suffered to my right-dominant-hand[.]" (Pl.'s Mot. Third TRO at 1, ECF No. 130.)

PAGE 2 – OPINION AND ORDER

Defendants opposed Ross's TRO motion on several grounds (Defs.' Resp. Pl.'s Mot. TRO, ECF No. 66), but later filed a supplement reporting that ODOC had approved Ross to receive a Securebook with speak-to-text software. (Suppl. Defs.' Resp. at 1, ECF No. 70.) Ross filed a reply in support of his TRO (ECF No. 72), followed by several supplemental filings. (*See* ECF Nos. 73, 83, 87-90, 98, 106.)

Although Ross acknowledges that he has now received the Securebook with speak-to-text software, he now objects to its required terms of use. (*See, e.g.*, Pl.'s Status Update at 1-2, challenging the terms of use allowing Defendants to determine when Ross is no longer in need of the Securebook; allowing Defendants to confiscate the Securebook if Ross is improperly using the device; prohibiting Ross from using the Securebook for legal work; prohibiting Ross from saving or storing a document on the Securebook; and requiring that Ross print documents from the Securebook in the law library subject to its rules,[2] ECF No. 83.) Defendants responded, outlining various rules that all adults in custody ("AIC") must follow, including ODOC's information technology rules and rules governing access to law library services and equipment and for the preparation and filing of legal documents. (Defs.' Resp. Pl.'s Status Update at 1-10, ECF No. 92; *see also* Decl. Kaycie Thompson Supp. Defs.' Resp., ECF No. 92-1; Decl. Jillian Janis Supp. Defs.' Resp., ECF No. 92-2.)

In his latest filings in support of his second TRO motion, Ross clarifies that he is now asking the Court to order Defendants not to interfere with his "abilities to use my Securebook fully and to be allowed to store and work on my legal work on it." (Pl.'s Reply at 19, ECF No. 98.) The Court held oral argument on Ross's motion on June 24, 2025. (ECF No. 107.)

---

[2] Ross also asserted he had not received earphones to utilize the speak-to-text software, but he later acknowledged he found the earphones in the issued box. (*See* Pl.'s Suppl. Status Update Ex. 1, ECF No. 86.)

PAGE 3 – OPINION AND ORDER

## DISCUSSION

### I.   LEGAL STANDARDS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008) (citations omitted). The elements of the test are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d. 1127, 1131 (9th Cir. 2011) ("For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits."). "When the government is a party, [the] last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The standard for granting a temporary restraining order is "substantially identical" to the standard for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

A "mandatory injunction orders a responsible party to take action" and "is particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (simplified); *see also Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 (D. Or. 2018) (noting that the "already high standard for granting a TRO or preliminary injunction is further heightened when the type of injunction sought is a 'mandatory injunction'" (citing *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015))).

The Prison Litigation Reform Act ("PLRA") imposes additional restrictions on a court's ability to grant injunctive relief. Any such "(1) relief must be narrowly drawn, (2) extend no further than necessary to correct the harm the court finds requires preliminary relief, and (3) be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). The PLRA

PAGE 4 – OPINION AND ORDER

requires that courts "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity[.]" *Id.*

Finally, a plaintiff's motion for equitable relief must relate to the claims in his operative complaint. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 638 (9th Cir. 2015) ("The district court properly ruled that [the plaintiff's] motion for injunctive relief was unrelated to its underlying complaint. [The plaintiff] cannot seek interim equitable relief of a nature it is not seeking in the final adjudication of its lawsuit."). The relationship with the operative complaint is sufficient if the temporary relief sought "would grant 'relief of the same character as that which may be granted finally.'" *Id.* at 636 (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). While new allegations of misconduct may support additional claims against a defendant, "they do not support preliminary injunctions entirely unrelated to the conduct asserted in the underlying complaint." *Id.* Absent this relationship or nexus, the Court "lacks authority to grant the relief requested." *Id.*

## II.    ANALYSIS

In his motion for a temporary restraining order, Ross originally asked the Court to order Defendants to stop interfering with and delaying the processing and issuance of "any and all" ADA resources, citing the delay in receiving a Securebook with speak-to-text software while his right hand healed from an injury and resulting surgery. (Pl.'s Mot. TRO at 1.) It is undisputed that Defendants have now provided Ross with a Securebook with the requested software, and Ross has not identified any other examples of delays in the processing or issuance of ADA resources. Accordingly, the Court denies Ross's motion for a temporary restraining order as moot. *See Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (holding that a claim becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the

PAGE 5 – OPINION AND ORDER

outcome") (simplified); *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 864 (9th Cir. 2017) ("A request for injunctive relief remains live only so long as there is some present harm left to enjoin." (quoting *Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995))); *cf. Voth v. Laney*, No. 2:16-cv-00779-AC, 2016 WL 8677345, at *3 (D. Or. Dec. 2, 2016) ("Plaintiff is no longer housed in the DSU at [Oregon State Penitentiary]; as noted, Plaintiff is now incarcerated at TRCI. When a prisoner seeks injunctive relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. Accordingly, the injunctive relief sought by Plaintiff has been rendered moot." (first citing *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); and then citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991))).

Having received his Securebook with the requested software, Ross is now asking the Court to order Defendants to allow him broader access to his Securebook, as an accommodation for his alleged disability and to allow him to access the courts. Ross's request for relief is not properly before the Court because he did not seek the same relief in his opening motion.

In any event, Ross's amended request is outside the scope of his complaint because he has not alleged an ADA or access to the courts claim, nor has he challenged the applicable administrative rules or policies regulating AICs' use of digital devices. As a result, the Court denies Ross's amended request for injunctive relief as outside the scope of his complaint. *See Pac. Radiation Oncology*, 810 F.3d at 636 (explaining that there must be "a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself" and the relationship is sufficiently strong only where the injunction would provide "relief of the same character as that which may be granted finally") (simplified); *see also Ross v. Blewett*, No. 2:20-cv-01338-SB, 2023 WL 3063181, at *2 (D. Or. Feb. 27, 2023)

PAGE 6 – OPINION AND ORDER

(denying Ross's motion for a temporary restraining order in an earlier case that would have required TRCI to provide him with a Securebook because the "preliminary injunctive relief Ross s[ought] bears no relation to the relief he sought in his operative complaint at the time of filing"), *findings and recommendation adopted*, 2023 WL 3058056 (D. Or. Apr. 24, 2023), *appeal dismissed*, No. 23-35298, 2023 WL 11227128 (9th Cir. Nov. 13, 2023).

## CONCLUSION

For the reasons stated, the Court DENIES Ross's second motion for a temporary restraining order (ECF No. 61).

**IT IS SO ORDERED.**

DATED this 2nd day of September, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 7 – OPINION AND ORDER